# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**_____

**Filing Date:  November 1, 2018**

**NO. S-1-SC-36428**

**STATE OF NEW MEXICO,**

 Plaintiff-Respondent,

v.

**KELSON LEWIS,**

 Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Christina P. Argyres, District Judge**

Bennett J. Baur, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Petitioner


Hector H. Balderas, Attorney General
Marko David Hananel, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

{1}     In this appeal we address two issues which arise when a jury is asked to render a verdict on a count that includes both greater and lesser offenses and it deadlocks in its deliberations on the greater offense. First, we clarify what is required of the district court under Rule 5-611(D) NMRA in polling the jury to determine on which offense the jury has deadlocked. We hold that a district court satisfies the requirements under Rule 5-611(D) when it has established a clear record as to which offense the jury is deadlocked. Strict compliance with the provisions of Rule 5-611(D) is not necessary to fulfill its purpose. Second, we recognize an ambiguity in our existing jury instructions regarding the order in which a jury must deliberate on counts which include both greater and lesser included offenses. To resolve this ambiguity and provide guidance to courts and litigants forthwith we adopt an approach to jury instructions that enables the jury to consider both the greater and lesser offenses under a count in any order it deems appropriate provided it return a verdict of not guilty on the greater offense before the court may accept a verdict on the lesser included offense.

**I.     BACKGROUND**

{2}     The State prosecuted Defendant, Kelson Lewis, under a five-count indictment.

The only count at issue in this appeal is Count 1, under which Defendant was charged with criminal sexual contact of a minor (CSCM) contrary to NMSA 1978, Section 30-9-13 (2003). At the close of the State's case at trial, the district court granted the State's motion to amend the CSCM charge from second to third degree and granted Defendant's motion to include battery as a lesser included offense under Count 1.

{3} The jury was therefore instructed that there were three possible verdicts for Count 1: guilty of CSCM, guilty of battery, or not guilty on the entire count. The jury was not provided with a verdict form for a not guilty verdict on CSCM specifically. The district court also instructed the jury, "If you should have a reasonable doubt as to whether Defendant committed the crime of [CSCM], you must proceed to determine whether he committed the included offense of battery." *See* UJI 14-6002 NMRA.

{4} On the third day of deliberations, the jury sent a note to the district court asking, "If we cannot come to a unanimous decision for Count 1, do we move on to discuss/decide on the lesser charge for Count 1[?]" After consulting with defense counsel and the State and receiving their consensus, the district court responded by sending a note to the jury stating, "If you have a reasonable doubt as to the guilt on Count 1, only then do you move to consideration of the included offense of battery."

2

{5}     Thirty minutes later, the jury sent a second note asking, "On the count of criminal sexual contact we are unable to reach unanimous decision of guilty or not guilty. Should we move on to a lesser charge of battery?" Again with the agreement of both defense counsel and the State, the district court responded with a note stating, "No. Have you reached a unanimous verdict on the other counts?"

{6}     Roughly thirty-five minutes later, the jury sent a note stating that it had completed its deliberations on the other counts. The district court then confirmed with the jury that it had completed its deliberations as to Count 1.

{7}     After calling the jury into court, the district court had the following exchange with the jury foreperson:

> THE COURT: I'm also understanding none of the forms are signed as to Count 1. And based on the note you all sent, it's my understanding that there's no possibility for juror agreement on Count 1; is that correct?
>
> THE JUROR: That is correct, Your Honor.
>
> THE COURT: And I'm seeing heads shaking in the jury box that there's not -- you're unable to reach unanimous verdict. Is that correct[?]
>
> THE JUROR: That's correct.

The district court stated it would declare a mistrial as to Count 1. The district court issued an order finding manifest necessity to declare a mistrial as to CSCM on the

basis that the jury was unable to reach unanimous agreement as to that offense. Defendant filed a motion to bar retrial on the greater offense of CSCM on double jeopardy grounds. Defendant asserted that the jury was not polled regarding Count 1 and therefore there was not a clear record as to whether the jury was deadlocked on CSCM or battery. The district court denied Defendant's motion, finding that its procedure was proper under Rule 5-611(D) because it polled the jury through the notes exchanged during deliberations and "reaffirmed in open court" that "the jury could not reach a unanimous decision as to Count 1."

{8} Defendant appealed the district court's order to the Court of Appeals, claiming that the district court failed to properly poll the jury on Count 1 and therefore retrial on the greater charge of CSCM would subject him to double jeopardy in violation of the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution. *State v. Lewis*, 2017-NMCA-056, ¶ 2, 399 P.3d 954. The Court of Appeals rendered an opinion affirming the district court's order. *Id.* ¶ 17. Defendant filed a petition for writ of certiorari with this Court asking us to review the Court of Appeals' opinion, which we granted pursuant to Rule 12-502 NMRA. In addition to the issue raised by the Defendant regarding whether the district court adequately polled the jury as to Count 1, we asked the parties to address the issue of

4

whether the district court erred by instructing the jury that it could not consider the lesser included offense of battery if it was deadlocked on the greater offense of CSCM. *See State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659 (acknowledging "that as a general rule, propositions of law not raised in the trial court cannot be considered sua sponte by the appellate court" but that we have done so for "questions of a general public nature affecting the interest of the state at large" (internal quotation marks and citations omitted)).

## II.    DISCUSSION

{9}    We proceed to address two issues which lie at the core of the jury's inability to agree on a verdict of guilty or not guilty on the greater charge of CSCM. First, we address whether retrial of Defendant on the greater charge of CSCM would violate constitutional protections against double jeopardy—being tried twice for the same crime—where the district court did not strictly comply with the formal requirements of Rule 5-611(D) but clearly established on the record that the jury was deadlocked on CSCM. We then turn to the second issue regarding how a district court must instruct a jury on the manner and order in which it is to deliberate on a count with lesser included offenses. In addressing this second issue, we acknowledge an ambiguity in our existing jury instructions and address the problem by providing

5

guidance to courts and litigants alike.

**A.    The District Court Did Not Abuse Its Discretion By Declaring a Mistrial on All Offenses Under Count 1 Where it Had Established a Clear Record That the Jury Was Deadlocked on the Greater Charge of CSCM**

{10}    "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Central to that question in this case is whether the district court erred by determining that the jury was deadlocked on the charge of CSCM based on the notes sent during deliberations and its exchange with the jury foreperson after deliberations. We review a district court's determination that the jury was deadlocked on a particular charge under a count with greater and lesser included offenses for an abuse of discretion. *See State v. Phillips*, 2017-NMSC-019, ¶¶ 1, 14, 396 P.3d 153; *State v. Wardlow*, 1981-NMSC-029, ¶¶ 12-13, 95 N.M. 585, 624 P.2d 527. "A trial court abuses its discretion when its decision is contrary to logic and reason." *Roselli v. Rio Cmtys. Serv. Station, Inc.*, 1990-NMSC-018, ¶ 11, 109 N.M. 509, 787 P.2d 428.

{11}    The constitutional protection against double jeopardy prevents retrial of a crime after a jury has rendered a verdict of either guilty or not guilty as to that offense; on the other hand, a defendant may be retried if the jury is deadlocked or hung on that offense. *State v. Collier*, 2013-NMSC-015, ¶¶ 11, 14, 301 P.3d 370; *Phillips*, 2017-

6

NMSC-019, ¶ 1. Because the protection against double jeopardy prevents a retrial of a crime where the jury has rendered a verdict, when a jury indicates that it is deadlocked on a count with lesser included offenses the district court must poll the jury in order to clearly establish on the record the precise offense on which the jury was deadlocked. *Phillips*, 2017-NMSC-019, ¶ 1.

> Importantly, the judge must confirm that the jury did not unanimously agree that the defendant was not guilty of one or more of the included offenses because the constitutional protection against double jeopardy precludes the State from prosecuting the defendant for such offense(s) since the jury's unanimous agreement on a verdict of not guilty constitutes an acquittal.

*Id.* In such a count with greater and lesser included offenses, it can be difficult to determine on which offense the jury is deadlocked and which offenses, if any, it has unanimously agreed to acquit. The manner for making this determination is set forth in Rule 5-611(D) as follows:

> If the jury has been instructed on one or more lesser included offenses, and the jury cannot unanimously agree upon any of the offenses submitted, the court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed. If upon a poll of the jury it is determined that the jury has unanimously voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense.

7

{12} Defendant argues that because the district court did not "formally poll" the jury and instead only questioned the foreperson as to whether the jury was deadlocked on "Count 1," the district court failed to strictly comply with the polling requirement of Rule 5-611(D) and thereby abused its discretion in determining that the jury was deadlocked on the highest offense of CSCM. We disagree with this contention. We conclude that the district court satisfied the purpose of Rule 5-611(D) by establishing a clear record that the jury was deadlocked on CSCM and therefore did not abuse its discretion by declaring a mistrial and allowing a retrial of the offense of CSCM. As aptly stated by the Court of Appeals in its review of the issue, to hold that the district court abused its discretion in this case by failing to strictly comply with the formal requirements of Rule 5-611(D) would "exalt form over substance" where the purpose of the rule has been satisfied. *Lewis*, 2017-NMCA-056, ¶ 16.

{13} We have recognized that the language of Rule 5-611(D) is mandatory, concluding that when a jury is deadlocked on a count with lesser included offenses the district court "must poll the jurors, beginning with the greatest offense, to determine whether they unanimously found the defendant not guilty of any individual offense within the count." *Phillips*, 2017-NMSC-019, ¶ 6. We acknowledge, as the Court of Appeals has, that this polling requirement was drafted based significantly

8

on our holding in *State v. Castrillo*, 1977-NMSC-059, ¶¶ 5, 14, 90 N.M. 608, 566 P.2d 1146.[1] *See State v. Garcia*, 2005-NMCA-042, ¶ 26, 137 N.M. 315, 110 P.3d 531 ("It is apparent that Rule 5-611(D) was likely drafted, for the most part, based on the committee's reading of *Castrillo*.").

{14}     In *Castrillo*, we held that there is no manifest necessity to declare a mistrial on the greater offenses and the defendant may only be retried on the least included offense where "the record is not clear as to which of the included offenses the jury was considering at the time of its discharge." 1977-NMSC-059, ¶ 14. The defendant in *Castrillo* was tried for first-degree murder with the lesser included offenses of second-degree murder and voluntary manslaughter. *Id.* ¶ 1. After deliberations, the foreperson announced that the jury was deadlocked and the district court declared a mistrial. *Id.* ¶¶ 1, 14. The district court asked for the numerical division of the jury and the foreperson indicated that nine jurors were for acquittal and three were for "some degree of conviction," but the court did not otherwise inquire as to which charge the jury was deadlocked. *Id.* ¶ 14. The defendant was retried, convicted of

---

[1]"Although in *Wardlow* this Court stated that *Castrillo* was overruled to the extent that it was inconsistent with *Wardlow,* we now clarify that we perceive no inconsistency between those cases." *Phillips*, 2017-NMSC-019, ¶ 17 n.1 (citation omitted).

second-degree murder, and appealed on double jeopardy grounds. *Id.* ¶ 1. We concluded that the "record [was] silent upon which, if any, of the specific included offenses the jury had agreed and upon which the jury had reached an impasse" and held that any doubt must be resolved "in favor of the liberty of the citizen." *Id.* ¶ 14. Because the record was not clear as to whether the jurors disagreed on first- or second-degree murder, "no necessity [was] manifest to declare a mistrial as to those offenses and thus jeopardy [had] attached." *Id.* However, the defendant could be retried on the least included offense, manslaughter, because the jury would not have announced it was deadlocked had it reached a unanimous decision on that offense. *Id.* ¶¶ 14-15.

{15}     Since *Castrillo*, when deciding whether a district court erred in finding manifest necessity to declare a mistrial on counts containing lesser included offenses, we unequivocally consider whether a clear record was established by the district court when determining on which offense the jury was deadlocked. In *Wardlow*, the foreperson stated that the jury was deadlocked on the greater charge but was unanimous against the lesser charge. 1981-NMSC-029, ¶ 4. Upon questioning by the district court, the foreperson explained that the jury did not believe the lesser charge to be appropriate but had not executed the not guilty form for that lesser charge. *Id.*

10

¶¶ 4, 12. We concluded in *Wardlow* that because the record was clear that the jury was deadlocked on the greater charge and did not have the intent to acquit on the lesser, the district court did not abuse its discretion by declaring a mistrial as to both offenses. *Id.* ¶¶ 5,12-13.

{16}	More recently in *Phillips*, when the jury indicated that it was deadlocked, the district court polled the jury and received conflicting and ambiguous responses from the jurors as to whether they were deadlocked on the greatest charge in the count. 2017-NMSC-019, ¶¶ 11, 14. The district court then denied the defendant's request that the court clarify the ambiguity in the jurors' responses and declared a mistrial as to all the charges under the count. *Id.* ¶ 12. On appeal, we concluded that, by failing to clarify the ambiguous responses to the jury poll, the district court failed to create "a clear record indicating the crimes on which the jurors had failed to reach a unanimous verdict" and therefore "it was an abuse of discretion for the court to conclude that the jury was hung and that there was manifest necessity justifying a mistrial on all of the crimes in [the count]." *Id.* ¶¶ 15-16.

{17}	In accordance with this precedent, the purpose of the polling requirement of Rule 5-611(D) is for the district court to create a clear record as to "which, if any, of the specific included offenses the jury had agreed and upon which the jury had

11

reached an impasse." *Castrillo*, 1977-NMSC-059, ¶ 14. In the instant case, the district court's exchange with the jury foreperson "was designed to elicit this information" and satisfied the purpose of Rule 5-611(D). *Wardlow*, 1981-NMSC-029, ¶¶ 9, 12-13 (concluding that the district court's questioning of the foreperson clearly established that the jury was deadlocked on the greater offense).

{18}    During deliberations in the present case, the jury sent two notes indicating that it was deadlocked on the CSCM charge. The first stated that it was unable to reach unanimity on "Count 1" and asked the district court if it should proceed to consideration of "the lesser charge for Count 1." The second note expressly stated that the jury was unable to reach unanimous agreement "[o]n the count of criminal sexual contact" and again asked the district court if it should proceed to the "lesser charge of battery." Then, after the jury indicated that it was finished deliberating on the count, the jury foreperson confirmed in open court that there was no possibility for unanimous agreement on Count 1. These exchanges render the record clear—the jury was deadlocked on the greater charge of CSCM.

{19}    Defendant contends that the level of offense on which the jury was ultimately deadlocked is unclear because the jury continued to deliberate for approximately thirty-five minutes after sending the notes and therefore the notes do not reflect the

12

jury's final position. We agree with Defendant that a note sent during deliberations "merely provides a snapshot of the jury's thinking partway through deliberations and does not give a definitive answer as to its final disposition of each crime within [the count]." *Phillips*, 2017-NMSC-019, ¶ 18. For this reason, we held in *Phillips* that a note sent the day before the conclusion of deliberations stating that the jury was deadlocked on a specific charge did not establish a clear record as to which offense the jury was deadlocked at the time of its discharge. *Id.* ¶¶ 7, 18. Consistent with our holding in *Phillips*, the notes in this case do not in and of themselves establish a clear record of the jury's position at the time of its discharge. *See id.* ¶ 18 ("Indeed, the jury's note would not be sufficient even if it had been sent to the court on the same afternoon as the jury poll because once the court conducted the jury poll, the results of that poll were the ultimate expression of the jury's verdict at the time of its discharge."). However, unlike the notes in *Phillips*, the notes here were sent close in time to the conclusion of jury deliberations and thus provide meaningful context to the foreperson's confirmation shortly thereafter that there was "no possibility for juror agreement on Count 1." We recognize, as did the Court of Appeals, that the notes "consistently refer to CSCM as 'Count 1' and battery as the 'lesser charge' or 'included offense.'" *Lewis*, 2017-NMCA-056, ¶ 10. In this context, the foreperson's

13

confirmation that the jury was unable to reach unanimous agreement on "Count 1" was plainly in reference to the greater charge of CSCM.

{20}     Therefore, unlike in *Phillips* and *Castrillo*, the district court's discourse with the foreperson in open court, along with the substance and timing of the notes, established a clear record "as to which of the included offenses the jury was considering at the time of its discharge." *Phillips*, 2017-NMSC-019, ¶ 18 (quoting *Castrillo*, 1977-NMSC-059, ¶ 14). Because the district court clearly established on the record that the jury was deadlocked on CSCM, the purpose of Rule 5-611(D) was satisfied. We therefore hold that it was not an abuse of discretion for the district court to conclude that the jury was deadlocked on the crime of CSCM and that there was manifest necessity justifying a mistrial on all counts. *Phillips*, 2017-NMSC-019, ¶ 16. We affirm the district court's denial of Defendant's motion to bar retrial of the greater offense of CSCM.

**B.     A Jury Should Be Instructed That It May Deliberate on the Greater and Lesser Offenses Under a Count in Any Order It Sees Fit, but Must Return a Not Guilty Verdict on the Greater Offense Before the Court May Accept Any Verdict on the Lesser Offense**

{21}     We next turn to the issue of how a district court must instruct a jury regarding its deliberations on counts with lesser included offenses, recognizing that UJIs 14-

14

6002 and 14-6012 NMRA are ambiguous and inconsistent with other uniform jury instructions regarding whether a jury may proceed to consideration of a lesser offense if deadlocked on the greater offense. Because issues regarding this ambiguity and inconsistency are likely to arise and impact criminal defendants in the future, we address this issue sua sponte as a "question[] of a general public nature affecting the interest of the state at large." *See State v. Consaul*, 2014-NMSC-030, ¶¶ 27-28, 332 P.3d 850 (quoting *Jade G.*, 2007-NMSC-010, ¶ 24) (raising sua sponte the issue of whether the intent requirements in the UJIs for child abuse were consistent with legislative intent, in part because of the issue's potential to "impact[] people and events all across our state, and the fundamental rights of criminal defendants in particular"); *cf. State v. Parish*, 1994-NMSC-073, ¶¶ 4, 15-20, 118 N.M. 39, 878 P.2d 988 (concluding that UJIs which were capable of more than one interpretation when considered in the context of the instructions as a whole were ambiguous and their use constituted reversible error).[2]

---

[2]The issue of whether the district court in this case erred by instructing the jury that it could not proceed to consideration of the lesser offense of battery if deadlocked on the greater offense of CSCM is moot as to Defendant. Defendant did not object to this instruction and it would therefore be reviewed for fundamental error, the remedy for which is a new trial. *State v. Cunningham*, 2000-NMSC-009, ¶¶ 8, 10, 128 N.M. 711, 998 P.2d 176. We have concluded that Defendant may be retried on all offenses under Count 1 without violating double jeopardy. Therefore, granting a new trial

15

{22}     Before commencing its deliberations, the jury was instructed on two occasions by the district court that it should proceed to consideration of the lesser offense of battery if it had reasonable doubt as to Defendant's guilt of the greater offense of CSCM. First, consistent with UJI 14-6012, the district court gave the following instructions regarding Count 1:

> [I]n this case as to the charge of criminal sexual contact of a minor contained in Count 1 there are three possible verdicts.
>
> One, guilty of criminal sexual contact of a minor child under the age of 13; or, two, guilty of the battery; or, three, not guilty.
>
> You must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further. You will then consider whether the defendant is guilty of the crime of criminal sexual contact of a minor. If you find him guilty of that crime, then that is the only form of verdict which is to be signed.
>
> If you have a reasonable doubt as to his guilt of that crime, you would go on [to the] crime of battery. If you find him guilty of that crime, that is the only form of verdict which should be signed. But if you have a reasonable doubt as to his guilt of the crime of battery, then you should find him not guilty and sign only the not guilty form.
>
> You may not find the defendant guilty of more than one of the

would not provide Defendant with any actual relief and the issue is moot. *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008. For this reason, we will not address whether the district court's instructions in this case constituted fundamental error but will instead address the ambiguity and inconsistency in our UJIs as a matter of public importance.

16

foregoing crimes. If you have reasonable doubt as to whether the defendant committed any one of the crimes, you must determine that he's not guilty of that crime. If you find him not guilty of all of these crimes in Count 1, you must return a verdict of not guilty as to this count.

Second, consistent with UJI 14-6002, the district court gave the following instruction between the elements of CSCM and battery: "If you should have a reasonable doubt as to whether the defendant committed the crime of criminal sexual contact of a minor, you must proceed to determine whether he committed the included offense of battery."

{23}   Having received these instructions, the jury was nevertheless uncertain whether it was permitted to proceed to consideration of the lesser offense of battery when it was unable to agree on whether Defendant was guilty of the greater offense of CSCM and asked the court how to proceed. The district court considered the instruction modeled on UJI 14-6012, requiring the jury to proceed to consideration of the lesser offense if it had "reasonable doubt" as to Defendant's guilt on the greater offense, and understood "reasonable doubt" to mean the finding of Defendant not guilty of the greater offense. Given this understanding, the district court instructed the jury not to proceed to consideration of the lesser offense of battery if it was deadlocked on the greater offense of CSCM.

17

{24} Neither UJI 14-6002 nor 14-6012 directly address in their text or committee commentary whether a jury may proceed to consideration of a lesser offense if it is unable to agree on the greater offense. Both instructions simply state that the jury must proceed to consideration of the lesser offense if it has "reasonable doubt" of the defendant's guilt of the greater offense. UJI 14-6002; UJI 14-6012. Some courts in sister states have interpreted similar language to require the jury to unanimously find the defendant not guilty on the greater offense before proceeding to the lesser, while other courts have concluded that similar instructions allow juries to proceed to consider the lesser offense if unable to agree on the greater offense. *See Hawes v. State*, 2014 WY 127, ¶¶ 16-18, 335 P.3d 1073, 1078 (Wyo. 2014) (understanding a similar instruction to only allow the jury to consider the lesser offense if it found the defendant not guilty of the greater offense); *but see State v. Thomas*, 40 Ohio St. 3d 213, 533 N.E.2d 286, 292-93 (1988) (concluding that similar instructions did not require the jury to unanimously acquit the defendant of the greater offense before considering the lesser offense, but also concluding that such instructions were "rather ambiguous" and should instead expressly instruct the jury that it may consider the lesser offense if unable to agree on the greater offense).

{25} Here, the district court's understanding of UJI 14-6012 was a reasonable

18

interpretation. Because UJI 14-6012 states both that the jury must acquit the defendant of an offense if it has "reasonable doubt" that the defendant committed that offense and that the jury should proceed to consideration of the lesser offense if it has "reasonable doubt" of defendant's guilt on the greater offense, it was reasonable to interpret the instruction to allow the jury to proceed to the lesser offense only if it finds the defendant not guilty of the greater offense. However, when discussing earlier versions of these UJIs we have stated that a jury must proceed to consider the lesser offense if it unanimously acquits the defendant or is unable to reach unanimity on the greater offense. *Castrillo*, 1977-NMSC-059, ¶ 6 (discussing NMSA 1953, UJI 50.01, 50.12 (1975) (Vol. 6, 2d Repl., Part 1, 1975 Pocket Supp.)). Additionally, our current jury instruction for consideration of counts with various degrees of homicide expressly states that a jury should proceed to consider the lesser offense if, after reasonable deliberation, it is unable to agree that the defendant is guilty of the greater offense. UJI 14-250 NMRA; *see also State v. Vigil*, 1990-NMSC-066, ¶¶ 15-16, 110 N.M. 254, 794 P.2d 728 (concluding that, in a homicide case, the district court's instructions that a "verdict must be unanimous" did not lead "jurors to believe that they had to be unanimously in favor of acquittal on the first-degree murder charge before they could move on to consider lesser charges," contrary to UJI 14-250).

19

Similar to the homicide instructions, the instruction for consideration of child abuse resulting in the death of a child under twelve, UJI 14-625 NMRA, allows the jury to proceed to consider the lesser offense if it is unable to agree on the greater offense.

{26} For these reasons, we conclude that UJIs 14-6002 and 14-6012 are susceptible to more than one reasonable interpretation. On one hand, the language of UJIs 14-6002 and 14-6012 supports the interpretation of the district court in the instant case—that the jury must acquit on the greater offense before considering the lesser included offense. On the other hand, our prior jurisprudence and the language of UJIs 14-250 and 14-625 support a different, yet equally rational, interpretation—that the jury may proceed to consider a lesser included offense if, after reasonable efforts, it is unable to agree on the greater offense.

{27} Despite our previous acceptance of jury instructions which allow juries to proceed to consider lesser offenses if they are unable to agree on the greater offense, we have never conducted an in depth analysis of the legal and policy rationales for and against such instructions. *See, e.g.*, *Castrillo*, 1977-NMSC-059, ¶ 6; *Phillips*, 2017-NMSC-019, ¶ 4. We have simply acknowledged that such instructions are consistent with a policy of refraining from interference with jury deliberations. *State v. Chamberlain*, 1991-NMSC-094, ¶¶ 33-34, 112 N.M. 723, 819 P.2d 673 ("The court

20

is not permitted to interfere with the jury's discretion to deliberate. . . .[T]he approach taken by a jury in reaching a decision should not be called into question. We agree with the policy that discourages, and in most instances prohibits, any inquiry or intrusion into the jury room." (internal quotation marks and citations omitted)).

{28} Therefore, the disparate, yet equally rational, interpretations of UJIs 14-6002 and 14-6012 compel us to consider the "wide divergence of opinion on the issue of the order and manner in which a trial court instructs a jury to consider an indicted offense together with any appropriate lesser-included offenses." *State v. Davis*, 266 S.W.3d 896, 905 (Tenn. 2008) (internal quotation marks and citation omitted). We do so in order to provide clarity and, perhaps more importantly, consistency in the instructions to juries regardless of the type of offense or offenses at issue in any given trial.

**1. Types of transitional instructions**

{29} There are at least four types of "transitional instruction" used by various jurisdictions. *Id.*; *see generally* Jay M. Zitter, *When Should Jury's Deliberation Proceed from Charged Offense to Lesser-Included Offense*, 26 A.L.R. 5th 603 (1995) (collecting and discussing cases considering how a jury should be instructed on how and when to proceed to consideration of lesser included offenses). First, several

jurisdictions have concluded that "acquit first" instructions, which do not allow the jury to consider the lesser offense unless it has determined that the defendant is not guilty of the greater offense, are proper or permissible. *See, e.g.*, *United States v. Moccia*, 681 F.2d 61, 64 (1st Cir. 1982); *Lindsey v. State*, 456 So. 2d 383, 387 (Ala. Crim. App. 1983), *aff'd*, *Ex Parte Lindsey*, 456 So. 2d 393 (Ala. 1984); *State v. Sawyer*, 227 Conn. 566, 630 A.2d 1064, 1071-75 (1993); *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596, 600-01 (1993); *Fulgham v. State*, 46 So. 3d 315, 329-30 (Miss. 2010); *State v. Taylor*, 141 N.H. 89, 677 A.2d 1093, 1097-98 (1996); *People v. Boettcher*, 69 N.Y.2d 174, 505 N.E.2d 594, 598 (1987); *State v. Daulton*, 518 N.W.2d 719, 720-23 (N.D. 1994); *State v. Turnidge*, 359 Or. 364, 374 P.3d 853, 930-32 (2016); *Commonwealth v. Hart*, 388 Pa.Super. 484, 565 A.2d 1212, 1216-20 (1989); *Davis*, 266 S.W.3d at 907-08; *Hawes*, 2014 WY 127, ¶¶ 16-18.

{30}     Second, two jurisdictions have adopted a "modified acquit first" instruction, allowing a jury to deliberate in the order it sees fit but requiring that it acquit the defendant of the greater offense before returning a verdict on the lesser offense. *See Dresnek v. State*, 697 P.2d 1059, 1060-64 (Alaska Ct. App. 1985), *aff'd*, 718 P.2d 156 (Alaska 1986); *People v. Kurtzman*, 46 Cal. 3d 322, 250 Cal. Rptr. 244, 758 P.2d 572, 576-80 (1988) (in bank). These instructions "distinguish between the jury's right to

22

deliberate about the elements of a lesser-included offense before deciding the greater offense and the preclusion on returning a verdict on the lesser-included offense without deciding the greater offense." *Dresnek*, 697 P.2d at 1064.

{31}     Third, several jurisdictions have adopted "unable to agree" or "reasonable effort" instructions, which allow the jury to consider a lesser offense if it is unable to agree on the greater offense after reasonable deliberation. *See, e.g.*, *State v. LeBlanc*, 186 Ariz. 437, 924 P.2d 441, 442-44 (1996) (in banc); *People v. Richardson*, 184 P.3d 755, 764 n.7 (Colo. 2008) (en banc); *Morris v. State*, 303 Ga. 192, 811 S.E.2d 321, 327 (2018); *State v. Ferreira*, 8 Haw. App. 1, 791 P.2d 407, 408-09 (1990), *cert. denied*, 71 Haw. 668, 833 P.2d 901 (1990); *State v. Parker*, 301 Kan. 556, 344 P.3d 363, 368 (2015); *Commonwealth v. Figueroa*, 468 Mass. 204, 9 N.E.3d 812, 827-31 (2014); *People v. Handley*, 415 Mich. 356, 329 N.W.2d 710, 712 (1982) (per curiam); *Tisius v. State*, 183 S.W.3d 207, 216-17 (Mo. 2006) (en banc); *Green v. State*, 119 Nev. 542, 80 P.3d 93, 95-97 (2003) (per curiam); *State v. Mays*, 158 N.C. App. 563, 582 S.E.2d 360, 367-68 (2003), *cert. denied*, 357 N.C. 510, 588 S.E.2d 379 (2003); *Thomas*, 533 N.E.2d at 291-93; *Graham v. State*, 2001 OK CR 18, ¶¶ 4-7, 27 P.3d 1026, 1027-28; *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009); *State v. Gardner*, 789 P.2d 273, 283-84 (Utah 1989); *State v. Wright*, 154 Vt. 512, 581

23

A.2d 720, 723-24 (1989); *State v. Labanowski*, 117 Wash. 2d 405, 816 P.2d 26, 35-36 (1991) (en banc); *State v. Truax*, 151 Wis. 2d 354, 444 N.W.2d 432, 436-37 (Ct. App. 1989), *cert. denied*, 446 N.W.2d 286 (1989).

{32}     Finally, a few jurisdictions use the "optional approach," which allows the defendant to choose between an acquit first or an unable to agree instruction. *See, e.g.*, Mont. Code Ann. § 46-16-607(3) (2017); *Jones v. United States*, 620 A.2d 249, 252 (D.C. Cir. 1993); *United States v. Jackson*, 726 F.2d 1466, 1469 (9th Cir. 1984); *Catches v. United States*, 582 F.2d 453, 459 (8th Cir. 1978); *United States v. Tsanas*, 572 F.2d 340, 346 (2d Cir. 1978). The courts of several states have rejected this approach on the grounds that the choice of transitional instruction "should be based on legislative and judicial policy, not each defendant's or each trial court's discretion." *Ferreira*, 791 P.2d at 409; *accord Labanowski*, 816 P.2d at 35; *Daulton*, 518 N.W.2d at 722; *Sawyer*, 630 A.2d at 1071; *Green*, 80 P.3d at 96. We agree that the choice of transitional instruction should not be left to the discretion of the defendant and district court in each case, and accordingly reject Defendant's request that we adopt the optional approach. We therefore turn to consider the various arguments for and against acquit first, unable to agree, and modified acquit first instructions.

## 2. We adopt the modified acquit first approach

{33} Courts adopting acquit first instructions have generally considered these instructions to promote the jury's duty to carefully deliberate on the greater charge and reduce the chances of the jury compromising on the lesser offense. *See, e.g.*, *Sawyer*, 630 A.2d at 1073 ("Anything less [than an acquit first instruction] dilutes the right of the state and the defendant to have the jury give its undivided attention and most serious deliberations to the offense with which the defendant is charged and flies in the face of the unanimity requirement[.]"); *Boettcher*, 505 N.E.2d at 597 ("[I]t is the duty of the jury not to reach compromise verdicts based on sympathy for the defendant or to appease holdouts, but to render a just verdict by applying the facts it finds to the law it is charged."); *Daulton*, 518 N.W.2d at 722 ("The primary difficulty with the unable to agree instruction is it dilutes the requirement of unanimity and encourages the jury to bypass the charged offense on its way to a compromise verdict[.]"); *Davis*, 266 S.W.3d at 907-08 (concluding that an acquit first instruction promotes structured and thorough deliberations, assures reliable verdicts, and "reduces the risk of a compromise verdict").

{34} On the other hand, several courts consider unable to agree instructions to reduce the risk of a hung jury, mistrial, and subsequent retrial by allowing juries the

25

freedom "to better gauge the fit between the state's proof and the offenses being considered." *LeBlanc*, 924 P.2d at 442-43; *see also Green*, 80 P.3d at 96 ("Use of the 'unable to agree' instruction reduces the risk of compromise verdicts by enabling the finders of fact to better gauge the fit between the evidence adduced at trial and the offenses being considered. The instruction also reduces the risk of hung juries and the significant costs involved with retrial."); *Thomas*, 533 N.E.2d at 292 ("We reject the 'acquittal first' instruction . . . because such an instruction encroaches on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and all the various offenses on which it has been properly instructed."); *Labanowski*, 816 P.2d at 34 (concluding that an "unable to agree" instruction "allows the jury to correlate more closely the criminal acts with the particular criminal conviction" and "promotes the efficient use of judicial resources" by reducing the likelihood of mistrials).

{35} For these reasons, the United States Court of Appeals for the Second Circuit, in an often cited case, concluded that both acquit first and unable to agree instructions have advantages and disadvantages for both the state and the defendant:

> [An acquit first instruction] has the merit, from the Government's standpoint, of tending to avoid the danger that the jury will not adequately discharge its duties with respect to the greater offense, and

26

instead will move too quickly to the lesser one. From the defendant's standpoint, it may prevent any conviction at all; a jury unable either to convict or acquit on the greater charge will not be able to reach a lesser charge on which it might have been able to agree. But it entails disadvantages to both sides as well: By insisting on unanimity with respect to acquittal on the greater charge before the jury can move to the lesser, it may prevent the Government from obtaining a conviction on the lesser charge that would otherwise have been forthcoming and thus require the expense of a retrial. It also presents dangers to the defendant. If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge.

An instruction permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater likewise has advantages and disadvantages to both sides the mirror images of those associated with [acquit first instructions]. It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid a mistrial, but at the risk of a conviction on the lesser charge which might not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser.

*Tsanas*, 572 F.2d at 346 (footnote omitted).

{36}     Upon review of these considerations, we recognize that the unable to agree approach adopted by several jurisdictions and approved by UJIs 14-250 and 14-625 has the practical benefit of reducing the likelihood of jury deadlock, mistrial, and the significant cost of retrial. *See Labanowski*, 816 P.2d at 34. However, we are

27

concerned that under an unable to agree instruction the jury may convict a defendant of a lesser offense without unanimously acquitting him or her of the greater offense, thereby barring retrial of an offense on which the defendant has not actually been found not guilty. *See Castrillo*, 1977-NMSC-059, ¶ 6 ("Either an acquittal or a conviction of a lesser included offense bars further prosecution for the greater offense."). This outcome deprives the State of a final resolution on the greater offense before barring retrial of that offense. *See Boettcher*, 505 N.E.2d at 597 (concluding that "unable to agree" instructions "have a deleterious effect" on the state because they may prevent retrial of an offense on which the jury did not find the defendant not guilty); *see also Dresnek*, 697 P.2d at 1063-64 (expressing concern that under the optional approach a jury may feel required to return a verdict on the lesser offense even if it was deadlocked on the greater offense).

{37}     Due to these concerns, we are persuaded that the modified acquit first approach of Alaska and California is the most sound approach. First, because under modified acquit first instructions the jury may deliberate as it sees fit, this approach is consistent with our stated policy of not interfering with jury deliberations. *See Chamberlain*, 1991-NMSC-094, ¶ 34. Second, by requiring the jury to return a verdict of not guilty on the greater offense before returning a verdict on the lesser

28

offense, this approach does not deprive the State of a final resolution on the greater offense. For these reasons, we agree with the Supreme Court of California that this approach is "adequate to protect both the defendant's interest in not improperly restricting the jury's deliberations and the [state's] interest in requiring the jury to grapple with the prospect of [the] defendant's guilt of the greatest offense charged." *Kurtzman*, 758 P.2d at 580.

{38}    For the aforementioned reasons, we adopt modified acquit first instructions for all counts with lesser included offenses and refer this issue to our Criminal Uniform Jury Instructions Committee to revise our jury instructions to conform with our holding. These instructions should make clear that the jury has the discretion to choose the manner and order in which it deliberates on the offenses in the count but that it must return a unanimous verdict of not guilty on the greater offense before the court may accept a verdict on the lesser offense. *See* CALJIC 17.10. We further recommend that the committee consider adopting partial verdict forms, allowing the jury to indicate that it unanimously finds the defendant not guilty on a greater offense even if deadlocked on a lesser offense, as consistent with the modified acquit first approach, *see* CALJIC 8.75, 17.10, 17.12, and the requirement under *Castrillo* that the district court create a clear record as to which offenses the jury has agreed and

29

which it has deadlocked. *See Castrillo*, 1977-NMSC-059, ¶¶ 5, 14 ("Henceforth, when a jury announces its inability to reach a verdict in cases involving included offenses, the trial court will be required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses. The jury may then be polled with regard to any verdict thus returned.").

## III.   CONCLUSION

{39}   Because the district court's questioning of the foreperson, in the context of the notes sent by the jury during deliberations, established a clear record that the jury was deadlocked on the charge of CSCM at the time of its discharge, we conclude that the district court did not abuse its discretion in finding manifest necessity to declare a mistrial on both charges under Count 1. Accordingly, we affirm the district court's denial of Defendant's motion to bar retrial on the greater offense of CSCM.

{40}   Furthermore, to address the ambiguity and inconsistency in our current uniform jury instructions, we adopt a consistent approach to the consideration of counts with lesser included offenses. Henceforth, juries shall be instructed that they have discretion to choose the order in which they deliberate on the offenses within a count but that they may not return a verdict on a lesser included offense unless they unanimously find the defendant not guilty on the greater offense.

30

{41}    **IT IS SO ORDERED.**


_____
**BARBARA J. VIGIL, Justice**

**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**GARY L. CLINGMAN, Justice**

31