# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMSC-019

Filing Date: May 15, 2017

Docket No. S-1-SC-35881

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

CLIVE PHILLIPS,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
David Williams, District Judge

The Hastings Law Firm
Mark A. Earnest
Albuquerque, NM

Law Office of Theresa M. Duncan
Theresa M. Duncan
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**CHÁVEZ, Justice.**

**{1}** This case addresses the procedure for determining whether a jury is deadlocked. A jury is deadlocked or "hung" on a crime when the jurors cannot unanimously agree on a verdict of guilty or not guilty for that crime. If the jury is deadlocked on a crime, the

defendant may be retried for that crime without violating constitutional protections against double jeopardy. Conversely, double jeopardy protections prevent a retrial when the jury has rendered a verdict. It follows from these basic precepts that when a jury is unable to reach unanimous agreement on an open count with lesser included offenses, the judge must poll the jury and clearly establish on the record on which offense in the count the jury was deadlocked. The defendant may be retried on the offense on which the jury was deadlocked and any lesser included offenses. Importantly, the judge must confirm that the jury did not unanimously agree that the defendant was not guilty of one or more of the included offenses because the constitutional protection against double jeopardy precludes the State from prosecuting the defendant for such offense(s) since the jury's unanimous agreement on a verdict of not guilty constitutes an acquittal. If the judge fails to clearly establish on the record the offense(s) on which the jury was deadlocked, all but the lowest offense must be dismissed and the dismissed offense(s) cannot be retried.

**{2}**     In this case, the jury announced that it was hung on Count 1, which required it to consider whether Defendant Clive Phillips was guilty of first-degree premeditated murder, second-degree murder, or voluntary manslaughter. The district court then polled the jurors. During the poll, seven jurors stated that the jury had unanimously agreed Phillips was not guilty of first-degree murder, but five jurors indicated the jury was unable to reach a verdict on that crime. The only verdict form given to the jury that exclusively referred to first-degree murder was the guilty verdict form, so there is no written record of whether the jury had acquitted Phillips of that crime or deadlocked during deliberations. The district court determined that the jury was hung on first-degree murder. We hold that the judge failed to clearly establish on the record whether the jury deadlocked on first-degree murder, and therefore Phillips can only be retried on the lowest offense in Count 1, which is voluntary manslaughter. We reverse the district court and remand to dismiss the first- and second-degree murder charges with prejudice.

**BACKGROUND**

**{3}**     Phillips shot his former girlfriend and shot and killed his friend after discovering them in bed together at the home they all shared. The State prosecuted Phillips for a number of crimes, and seven counts were submitted to the jury after trial, including Count 1, which contained the crimes of first-degree murder, second-degree murder, and manslaughter. The jurors did not enter a verdict on Count 1.

**{4}**     To resolve Count 1, the jury had the option of entering a verdict finding Phillips guilty of first-degree murder, second-degree murder, or voluntary manslaughter, or a verdict finding him not guilty of all three crimes. Because second-degree murder is a lesser included offense of first-degree murder, and voluntary manslaughter is a lesser included offense of both first- and second-degree murder, the model jury instruction used in this case requires jurors to individually consider each greater offense before considering a lesser offense. *See* UJI 14-6012 NMRA; UJI 14-250 NMRA. Under the model jury instruction, the jurors first must determine whether they unanimously agree that the defendant is guilty

2

of first-degree murder. UJI 14-250. If they agree that the defendant is guilty, the jury enters a guilty verdict for first-degree murder and does not need to consider second-degree murder or voluntary manslaughter. *Id.* If not, after reasonable deliberation, the jurors must then consider second-degree murder. *Id.* The jurors follow the same procedure with respect to second-degree murder and only consider voluntary manslaughter if they cannot unanimously agree that the defendant was guilty of second-degree murder. *Id.*

**{5}** If the jurors unanimously determine that there is reasonable doubt that the defendant committed any one of the aforementioned crimes, their verdict must be that the defendant is not guilty of that crime. *Id.* The jury in this case was not provided with a "not guilty" verdict form for each crime. Thus, if the jurors unanimously agreed that Phillips was not guilty of first-degree murder, they had no verdict form on which to indicate an acquittal on that specific crime because the only "not guilty" verdict form available to the jury on Count 1 required the jury to unanimously find Phillips not guilty of all three crimes.

**{6}** If the jurors cannot unanimously agree on any verdict for a count with lesser included offenses such as Count 1 in this case, the trial court must poll the jurors, beginning with the greatest offense, to determine whether they unanimously found the defendant not guilty of any individual offense within the count. Rule 5-611(D) NMRA. If the jury has unanimously found a defendant not guilty of any offense within the count, the trial court is required to enter a verdict of not guilty for the offense and for any greater degree of the offense. *Id.*

**{7}** The jurors in this case deliberated for three days. On the second day of deliberations, the jurors sent a note to the court indicating that some jurors believed that Phillips was guilty of second-degree murder because the State had proved that there was no sufficient provocation, and therefore those jurors were forced to vote against manslaughter. The note also indicated that the jurors agreed on all other elements of both offenses and asked the court for guidance on how to proceed. The note did not mention whether the jurors had voted to acquit Phillips or were deadlocked on first-degree murder. The court replied that the jurors had been "given all the procedural instructions." The jury continued to deliberate.

**{8}** On the third day, after approximately six additional hours of deliberations, the jury sent a note to the court reading: "What does it mean if we don't sign any of the papers on Count 1? We are hung." Concerning Count 1, the jury only received four papers for signature. The first was a verdict, which read "We find the defendant guilty of first degree murder by a deliberate killing as charged in Count 1." The second was a verdict, which read "We find the defendant guilty of second degree murder an included offense of Count 1." The third was a verdict, which read "We find the defendant guilty of voluntary manslaughter an included offense of Count 1." The fourth and last was a verdict, which read "We find the defendant not guilty of Count 1."

**{9}** Later that afternoon, the court called in the jury, and a juror informed the court that the jurors had not reached a verdict on Count 1 and that they would not reach a verdict, even with more time to deliberate. With respect to the charges in Count 1, the court asked "so as

3

to none of them, you could not reach an agreement?" to which the juror responded "No," which the court—despite the form of the question—interpreted to mean that the jurors could not reach an agreement. A jury poll was therefore required by Rule 5-611(D) to determine whether the jury had unanimously voted not guilty as to any offense included within Count 1.

**{10}** The district court polled the jurors to "inquire whether the jury ha[d] truly deadlocked on the greater offense of first-degree murder." As the court began its polling, the following colloquy ensued:

> THE COURT: I need to ask each and every one of you the question as to whether you have truly deadlocked on the greater offense of first-degree murder. I will start with you, Mr. Ashe.
>
> THE JUROR: So I don't understand how the—
>
> THE COURT: Yes or no, whether you were deadlocked with regards to the greater offense of first-degree murder. You cannot reach a decision as to that charge?
>
> THE JUROR: And the word "deadlock" meaning?
>
> THE COURT: That you unanimously could not reach a decision with your fellow jurors as to that charge.
>
> THE JUROR: I hate to say the wrong thing, but I believe we did reach a decision, and we went down to the next charge; is that correct?
>
> THE COURT: So with regards to first-degree, you were not deadlocked with first-degree?
>
> THE JUROR: No.
>
> THE COURT: I'm asking you, Mr. Ashe.
>
> THE JUROR: No.

The second juror also indicated that the jury was not deadlocked. The third juror initially responded to the question of whether the jury was deadlocked on first-degree murder with "I thought we were," but eventually said no. The next three jurors also answered no.

**{11}** The seventh juror sought further clarification:

> THE JUROR: Can I ask a question? I mean, deadlocked meaning we

4

couldn't agree?

> THE COURT: Correct. You could not arrive at a verdict.

> THE JUROR: Then, yes, we were deadlocked.

The next four jurors also answered yes to indicate that the jury was deadlocked on first-degree murder. The twelfth juror responded no to the same question. Thus, seven jurors indicated that the jury agreed on first-degree murder, which could only mean that the jury had agreed that Phillips was not guilty of that crime, but five jurors indicated that the jury was deadlocked. However, those five jurors indicated that they were deadlocked immediately after being told that "deadlocked" meant they could not agree on a *verdict*. Because the only verdict form offered to the jury for first-degree murder was a guilty verdict form, these five jurors could have answered "yes" to reflect that the jury could not agree to enter *that* verdict—finding Phillips guilty of first-degree murder. If this is what the five jurors meant by their answers, these answers could be consistent with the other seven jurors seemingly saying that the jury agreed that Phillips was not guilty of first-degree murder, for which there was no verdict form. Yet another reasonable interpretation of the answers from those five jurors is that the jury could not agree that Phillips was either guilty or not guilty of first-degree murder and was therefore hung on that crime.

**{12}** Despite the jurors' apparent inability to agree on whether they had disagreed, the district court declared that the jury was "split" and "in complete disagreement" on first-degree murder. Defense counsel astutely argued that the jurors' conflicting answers indicated that they were confused about the question, and therefore she urged the court to clarify the jury's resolution of the first-degree murder charge. The court responded that it had asked a yes-or-no question and could not clarify the jurors' responses any further, then declared a mistrial and reserved the State's right to retry Phillips on every crime in Count 1: first-degree murder, second-degree murder, and voluntary manslaughter.

**{13}** Phillips brought a motion to dismiss the first- and second-degree murder charges on double jeopardy grounds, arguing that the district court had not established a clear record of whether the jury had deadlocked on first- and second-degree murder due to the jurors' ambiguous responses during the jury poll. The district court denied his motion and held that the jury poll demonstrated that the jurors were hung on first-degree murder, and accordingly there was manifest necessity for the court's declaration of a mistrial as to every crime within Count 1. Phillips appealed to this Court to challenge the district court's denial of his motion to dismiss.

**DISCUSSION**

**{14}** The sole legal issue in this case is whether the district court abused its discretion by determining that the jurors were hung on first-degree murder based on the jury poll. *See State v. Wardlow*, 1981-NMSC-029, ¶ 13, 95 N.M. 585, 624 P.2d 527 (applying an abuse

5

of discretion standard to the trial court's determination that there was no reasonable possibility that the jury could agree on a verdict). When jurors are polled regarding their verdict, the trial court is under a nondiscretionary duty to clarify any ambiguity in the jurors' responses and obtain a clear and unambiguous response from the jury, beginning with the highest offense included in the count. *See State v. Holloway*, 1987-NMCA-090, ¶¶ 13, 16, 106 N.M. 161, 740 P.2d 711 ("The responsibility for preserving the right to a voluntary and unanimous verdict rests primarily on the trial court. . . . Where a juror's response indicates uncertainty concerning unanimity, a jury poll requires exploration of the uncertainty or dissent." (citations omitted)). The responses from the jurors in this case were ambiguous because some jurors indicated that the jury had reached a unanimous agreement on the charge of first-degree murder, while others stated that the jury could not unanimously agree to enter a verdict for the same charge. The jurors should have given uniform answers as to whether they unanimously agreed on the charge or could not agree. Their conflicting answers indubitably demonstrated confusion with the district court's question.

**{15}** In the face of juror confusion, the district court possessed significant discretion to undertake "proper remedial measures" to clarify the jurors' ambiguous responses. *Id.* ¶ 17. For example, the district court could have explained that the term "deadlocked" means that the jury could not unanimously agree that Phillips either was or was not guilty of first-degree murder, and then it could have re-polled the jury. In the alternative, the court could have requested not guilty verdict forms for each crime, submitted all verdict forms to the jury, and could then have directed the jurors to retire for further deliberations to determine whether they unanimously agreed on a verdict for any of the crimes. Rule 5-611(E). We do not intend to imply that these were the only methods available to the district court for clarifying the jurors' ambiguous responses during its polling of the jurors.

**{16}** However, the district court did not have the option of taking the action it did in this case. Without establishing a clear record indicating the crimes on which the jurors had failed to reach a unanimous verdict, it was an abuse of discretion for the court to conclude that the jury was hung and that there was manifest necessity justifying a mistrial on all of the crimes in Count 1. *See Holloway*, 1987-NMCA-090, ¶ 17 ("This discretion, and the action taken by the [trial] court, . . . must resolve any doubt concerning the unanimity of a verdict. . . . [T]he verdict should be definite in nature and devoid of any ambiguity.").

**{17}** We have long held that in cases such as this where the record is "silent upon which, if any, of the specific included offenses the jury had agreed and upon which the jury had reached an impasse," we must "resolve any doubt in favor of the liberty of the citizen" and "dismiss[] upon double jeopardy grounds . . . such offenses on which the record is unclear." *State v. Castrillo*, 1977-NMSC-059, ¶ 14, 90 N.M. 608, 566 P.2d 1146.[1] In *Castrillo*, the

---

[1]Although in *Wardlow* this Court stated that *Castrillo* was overruled to the extent that it was inconsistent with *Wardlow*, we now clarify that we perceive no inconsistency between those cases. *Wardlow*, 1981-NMSC-029, ¶ 15.

6

defendant was tried by a jury on first-degree murder with second-degree murder and voluntary manslaughter as the lesser included offenses. *Id.* ¶ 1. The foreman announced that the jury was deadlocked and that there was no purpose in continuing to deliberate. *Id.* ¶ 14. The judge declared a mistrial and then asked the foreman for a numerical split. *Id.* The foreman indicated that the split was nine for acquittal, and responded "Yes" when the judge asked, "Nine for acquittal and three for *some degree of conviction*?" *Id.* (emphasis added). The phrase "some degree of conviction" did not clearly establish upon which of the three crimes—first-degree murder, second-degree murder, or voluntary manslaughter—the jury was deadlocked. *Id.* ¶¶ 1, 14. The *Castrillo* Court noted that the lack of a clear record as to whether the jurors disagreed on first- or second-degree murder demonstrated no manifest necessity to declare a mistrial, and therefore jeopardy attached to those crimes and precluded the State from seeking a retrial. *Id.* ¶ 14. However, the defendant in *Castrillo* could be retried on the least included offense, voluntary manslaughter, because the jury would not have been hung had it reached a unanimous decision on manslaughter—it would have instead entered an acquittal on the entire count. *Id.*; *see also State v. Garcia*, 2005-NMCA-042, ¶ 22, 137 N.M. 315, 110 P.3d 531 (noting that "it would appear to be logically inconsistent, if not a logical impossibility" for a jury to simultaneously deadlock on a greater offense and acquit on a lesser included offense).

{18}  The same principle applies here because the district court in this case failed to create a clear record "as to which of the included offenses the jury was considering at the time of its discharge." *Castrillo*, 1977-NMSC-059, ¶ 14. This case presents an interesting wrinkle because the jury's note during the second day of deliberations demonstrates that at that point in the deliberations it was hung on second-degree murder. However, the note merely provides a snapshot of the jury's thinking partway through deliberations and does not give a definitive answer as to its final disposition of each crime within Count 1. *See Harrison v. Gillespie*, 640 F.3d 888, 899 (9th Cir. 2011) ("Because of the significance of the entire deliberative process, the jurors' preliminary votes in the jury room do not constitute a final verdict, even if they are unanimous. Instead, the verdict must be rendered by the jury in open court and accepted by the court in order to become final." (citations omitted)). Indeed, the jury's note would not be sufficient even if it had been sent to the court on the same afternoon as the jury poll because once the court conducted the jury poll, the results of that poll were the ultimate expression of the jury's verdict at the time of its discharge. *See Holloway*, 1987-NMCA-090, ¶ 23 (holding that the results of a jury poll superceded any contrary verdict determined in the jury room because jurors are free to change their votes and register dissent to a previously announced verdict during the jury poll). Here there was no clear record of the jury's decision at the time of its discharge. Thus, constitutional double jeopardy protections bar retrial on the first- and second-degree murder charges, but jeopardy has not attached to voluntary manslaughter, and the State may retry Phillips for that lesser included offense.

**CONCLUSION**

{19}  Because the district court failed to clarify the ambiguous and conflicting jurors'

7

responses during the jury poll, we vacate the district court's order denying Phillips' motion to dismiss the charges of first- and second-degree murder and remand the case to the district court with instructions to dismiss those charges with prejudice.

{20}   **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**BARBARA J. VIGIL, Justice**

_____
**JUDITH K. NAKAMURA, Justice**