**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2021-NMCA-041

Filing Date: May 28, 2020

No. A-1-CA-36748

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DARRYL PAUL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Certiorari Denied, September 28, 2020, No. S-1-SC-38371. Released for Publication October 5, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**IVES, Judge.**

**{1}**    Defendant Darryl Paul appeals the district court's denial of his motion to dismiss on double jeopardy grounds the charged offense of homicide by vehicle following a jury trial that produced no verdict. Defendant contends that, under *State v. Castrillo*, 1977-

NMSC-059, 90 N.M. 608, 566 P.2d 1146, he may not be retried for homicide by vehicle because the district court declared a mistrial based on manifest necessity due to jury deadlock without creating a "clear record[,]" *State v. Phillips*, 2017-NMSC-019, ¶ 16, 396 P.3d 153, as to whether the jury was deadlocked on the greater offense of homicide by vehicle, NMSA 1978, § 66-8-101 (2004), or on the lesser included offense of driving under the influence of intoxicating liquor, NMSA 1978, § 66-8-102 (2010). Although we agree that there was no manifest necessity for a mistrial on homicide by vehicle, we conclude that *Castrillo* does not apply in this case because Defendant consented to the district court's mistrial declaration, and we therefore affirm.

## BACKGROUND

{2}     Defendant was charged by criminal information with a single count of homicide by vehicle committed in violation of Section 66-8-101(A), (C) and resulting in the death of Sandy Tom. Defendant's trial ended in a mistrial when the district court concluded that the jury could not reach a unanimous verdict. At that trial, the district court instructed the jury on both homicide by vehicle and the lesser included offense of driving under the influence of intoxicating liquor (DUI), § 66-8-102, and instructed the jury that it could reach three possible verdicts, numbered in the written instructions as follows: (1) guilty of homicide by vehicle; (2) guilty of DUI; and (3) not guilty. The verdict form followed the same pattern.

{3}     At 11:22 a.m. on the only day of deliberations, the jury sent the district court a note stating that "on the first verdict" it was "at 11 [to] 1, with no chance of changing the 1." After conferring with counsel, the district court responded by calling the jury into the courtroom and instructing the jurors to again retire in order to determine whether further deliberations would enable them to achieve unanimity. Twenty minutes later, the jury sent another note stating that it would continue deliberating. At 2:11 p.m., the jury sent a final note, informing the district court that it "[could not] come to a unanimous decision" and that "[f]urther deliberations [would] not alter the outcome."

{4}     The district court, believing that "this [was] it," called counsel for both parties to the bench and asked them for input. After the prosecutor agreed that "this [was] it," defense counsel stated "I think we're at a hung jury state, Your Honor; I think we're at a mistrial." The district court then called the jury back into the courtroom, informed the foreperson that the jury's "latest note" told the court that "any further deliberation would be fruitless," and asked the foreperson whether she was "convinced of that." When the foreperson responded "Yes," the judge praised the jury for its work and informed the jurors that he would "meet with [them] for a moment before they [were] finally discharged." The judge returned twenty minutes later, apparently after discharging the jury outside of the parties' presence. At that point, defense counsel asked whether he needed "to do a motion for a mistrial" "on the record"; the district court responded that "the anticipated motion for a mistrial [was] granted."

{5}     One and a half months after trial, Defendant filed a motion to dismiss the charge of homicide by vehicle on double jeopardy grounds, contending that the district court

had erred in failing to poll the jury to determine whether it had deadlocked on that offense. After receiving the State's response and holding a hearing, the district court denied the motion, concluding that "it [was] clear and [un]ambiguous [that the jury] was deadlocked" on homicide by vehicle. Defendant appealed.

**DISCUSSION**

**I.      Standard of Review**

{6}      "A double jeopardy challenge is a constitutional question of law [reviewed] de novo." *State v. Lewis*, 2019-NMSC-001, ¶ 10, 433 P.3d 276 (internal quotation marks and citation omitted). However, we apply an abuse of discretion standard in reviewing "a district court's determination that [a] jury was deadlocked on a particular charge under a count with greater and lesser included offenses." *Id. See generally United States v. Perez*, 22 U.S. 579 (1824) (establishing that trial courts have broad discretion in determining whether a manifest necessity exists due to jury deadlock). "[W]hen deciding whether a district court erred in finding manifest necessity to declare a mistrial on counts containing lesser included offenses, [our appellate courts] consider whether a clear record was established by the district court when determining on which offense the jury was deadlocked." *Lewis*, 2019-NMSC-001, ¶ 15.

**II.     There Was No Manifest Necessity to Declare a Mistrial on the Charge of Homicide by Vehicle**

{7}      On appeal, Defendant contends, as he did below, that the State may not retry him for homicide by vehicle because the district court discharged the jury without determining whether it had acquitted him of that offense. Defendant's argument implicates his "valued right . . . to have his trial completed by the particular tribunal summoned to sit in judgment on him," *Downum v. United States*, 372 U.S. 734, 736 (1963), an aspect of his right under the Double Jeopardy Clause to avoid being "twice placed in jeopardy" of punishment for the same offense, *State ex rel. Schwartz v. Kennedy*, 1995-NMSC-069, ¶ 14, 120 N.M. 619, 904 P.2d 1044. When a trial court terminates a defendant's trial before the defendant obtains a verdict on a charged offense, the Clause protects that right by prohibiting the State from retrying the defendant for that offense unless the defendant consents to the termination or there is a manifest necessity for the termination. *Castrillo*, 1977-NMSC-059, ¶ 13. A jury's inability to reach a unanimous verdict—a jury deadlock—"is considered the classic basis establishing [a manifest] necessity." *Blueford v. Arkansas*, 566 U.S. 599, 609 (2012) (internal quotation marks and citation omitted).

{8}      In *Castrillo*, 1977-NMSC-059, ¶ 5, our Supreme Court held that defendants are entitled to provide the jury with the option of acquitting on each level of offense included in a count with greater and lesser included offenses. The jury in that case had deadlocked on at least one of the three included offenses submitted to it, but the record was "silent" regarding the level of deadlock. *Id.* ¶ 14. Because the trial court had declared a mistrial without determining whether the jury had acquitted the defendant of

either greater offense—an inquiry that *Castrillo*'s holding required—the Court concluded that there had been no manifest necessity for terminating the defendant's trial and that double jeopardy consequently barred retrial on both greater offenses. *Id.* Our Supreme Court later implemented its holding in *Castrillo* by adopting Rule 5-611(D) NMRA, which provides:

> If so instructed, the jury may find the defendant guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein. If the jury has been instructed on one or more lesser included offenses, and the jury cannot unanimously agree upon any of the offenses submitted, the court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed. If upon a poll of the jury it is determined that the jury has unanimously voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense.

*See Lewis*, 2019-NMSC-001, ¶ 13 ("We acknowledge, as the Court of Appeals has, that [the Rule's] polling requirement was drafted based significantly on our holding in [*Castrillo*.]" (citing *State v. Garcia*, 2005-NMCA-042, ¶ 26, 137 N.M. 315, 110 P.3d 531)).

**{9}** "[T]he language of [the Rule] is mandatory[.]" *Lewis*, 2019-NMSC-001, ¶ 13. However, in *Lewis*, our Supreme Court reaffirmed that, irrespective of a district court's compliance with Rule 5-611(D), the Double Jeopardy Clause[1] does not bar retrial where a district court "create[s] a clear record as to 'which, if any, of the specific included offenses the jury . . . agreed and upon which the jury . . . reached an impasse.' " 2019-NMSC-001, ¶ 17 (quoting *Castrillo*, 1977-NMSC-059, ¶ 14); *see also State v. Wardlow*, 1981-NMSC-029, ¶ 9, 95 N.M. 585, 624 P.2d 527 (holding that the district court had followed a "procedure . . . [in] accord[ance] with that mandated by . . . *Castrillo*" by questioning the jury foreman in open court in order to "elicit" "whether the jury ha[d] voted to acquit or convict the defendant on any of the lesser[ ]included offenses"). The district court in *Lewis* instructed the jury on the elements of criminal sexual contact with a minor in the third degree (CSCM) and the lesser offense of battery under a single

---

1Although the application of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applied to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784 (1969) (overruling *Palko v. Connecticut*, 302 U.S. 319 (1937)), is a matter of federal law, the United States Supreme Court in *Blueford* held that state law controls whether a trial court must ascertain whether a jury not initially presented with the option of acquitting on a greater offense alone has acquitted on that offense. *See* 566 U.S. at 609-10 ("We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict. As permitted under Arkansas law, the jury's options in this case were limited to two: either convict on one of the offenses, or acquit on all. . . . [T]he trial court did not abuse its discretion by refusing to add another option—that of acquitting on some offenses but not others." (footnote and citation omitted)).

count, Count 1. 2019-NMSC-001, ¶¶ 2-3. The given verdict forms permitted the jury to return a verdict of guilty on CSCM, a verdict of guilty on battery, or a verdict of not guilty on both charges. *Id.* ¶ 3. On the last day of deliberations, the jury asked the district court in a note whether, if it could not "come to a unanimous decision for Count 1," it should proceed to deliberate "on the lesser charge for Count 1[.]" *Id.* ¶ 4. After consulting with the parties, the district court replied that the jury should only consider "the included offense of battery" if the jury had "a reasonable doubt as to . . . Count 1[.]" *Id.* In a second note sent thirty minutes later, the jury asked whether it "[s]hould . . . move on to [consider the] lesser charge of battery[,]" indicating that it had been unable to achieve unanimity "[o]n the [CSCM] count." *Id.* ¶ 5. The court answered "No," again with both parties' concurrence, and asked the jury whether it had achieved unanimity on other counts submitted for its decision, *id.* ¶ 5, a question the jury answered affirmatively about thirty-five minutes later, *id.* ¶ 6. The court then asked the jury whether it had "finished deliberating on Count 1[,]" and the jury responded in a final note that it had indeed completed deliberations "on Count 1." *State v. Lewis*, 2017-NMCA-056, ¶ 8, 399 P.3d 954, *aff'd* 2019-NMSC-001.

{10}  The district court then called the jury into the courtroom and informed the foreperson of its understanding that "none of the [verdict] forms [were] signed as to Count 1" and that "there[ was] no possibility for juror agreement on Count 1[.]" *Lewis*, 2019-NMSC-001, ¶ 7. The court foreperson confirmed the accuracy of that understanding, agreeing with the court's assessment that the jury was unable to achieve unanimity. *Id.* The court consequently declared a mistrial as to Count 1, entering an order finding manifest necessity to declare a mistrial. *Id.* The defendant thereafter filed a motion to bar retrial on the CSCM charge, arguing that the district court had improperly failed to poll the jury regarding the offense on which it was deadlocked. *Id.* ¶ 8. After the district court denied his motion, the defendant sought review in this Court, and, after we affirmed, *Lewis*, 2017-NMCA-056, in our Supreme Court.

{11}  Our Supreme Court granted certiorari and affirmed, holding "that it was not an abuse of discretion for the district court to conclude that the jury was deadlocked on the crime of CSCM and that there was manifest necessity justifying a mistrial on all counts" "[b]ecause the district court [had] clearly established on the record that the jury was deadlocked on CSCM" and therefore "the purpose of Rule 5-611(D) was satisfied." *Lewis*, 2019-NMSC-001, ¶ 20. The Court reasoned that the following "exchanges render[ed] the record clear":

> During deliberations . . . , the jury sent two notes indicating that it was deadlocked on the CSCM charge. The first stated that it was unable to reach unanimity on "Count 1" and asked the district court if it should proceed to consideration of "the lesser charge for Count 1." The second note expressly stated that the jury was unable to reach unanimous agreement "on the count of criminal sexual contact" and again asked the district court if it should proceed to the "lesser charge of battery." Then, after the jury indicated that it was finished deliberating on the count, the

jury foreperson confirmed in open court that there was no possibility for unanimous agreement on Count 1.

*Id.* ¶ 18 (alteration incorporated). The Court acknowledged that "the notes . . . d[id] not in and of themselves establish a clear record of the jury's position at the time of its discharge[]" because "a note sent during deliberations 'merely provides a snapshot of the jury's thinking partway through deliberations and does not give a definitive answer as to its final disposition of each crime within the count.' " *Id.* ¶ 19 (alteration incorporated) (quoting *Phillips*, 2017-NMSC-019, ¶ 18). It reasoned, however, that, because the notes "were sent close in time to the conclusion of jury deliberations," they "provide[d] meaningful context to the foreperson's confirmation shortly thereafter that there was 'no possibility for juror agreement on Count 1.' " *Id.* The Court observed "that the notes [had] consistently refer[red] to CSCM as 'Count 1' and battery as the 'lesser charge' or 'included offense.' " *Id.* (internal quotation marks and citation omitted). "In [that] context," the Court concluded, "the foreperson's confirmation that the jury was unable to reach unanimous agreement on 'Count 1' [had] plainly [been] in reference to the greater charge of CSCM." *Id.* Double jeopardy did not bar retrial on the CSCM charge because "the district court's discourse with the foreperson in open court, along with the substance and timing of the notes, established a clear record as to which of the included offenses the jury was considering at the time of its discharge." *Id.* ¶ 20 (internal quotation marks and citation omitted).

**{12}** We conclude that the record in this case is unclear as to the level of offense on which the jury was deadlocked when the district court declared a mistrial. In *Lewis*, our Supreme Court held that the jury foreperson's *open-court confirmation* that the jury was deadlocked "on 'Count 1' " rendered the record clear regarding the level of jury deadlock. Although the reference to "Count 1," in the abstract, would have been ambiguous regarding the level of deadlock, the history of the jury's communications with the district court in that case made clear that "Count 1" referred to the greater offense of CSCM. Here, in contrast, the foreperson's open-court confirmation, on the basis of the jury's "latest note," that "further deliberations would be fruitless" did not reference any particular offense at all. The "latest note" the court had received stated that the jury could not "come to a unanimous decision" and that "further deliberations [would] not alter the outcome." This language was ambiguous as to the level of deadlock: because there were three possible "decision[s]" under the given verdict form (guilty of vehicular homicide, guilty of DUI, and not guilty of both), the note could have meant that the jury was deadlocked on the DUI offense, a deadlock that would produce the same "outcome" as a deadlock on the vehicular homicide charge. Although we agree with the State that the jury unambiguously indicated that it was deadlocked on the homicide by vehicle charge when it informed the court by note that it was at "11 [to] 1" on "the first verdict," that note was merely a "snapshot of the jury's thinking," *Lewis*, 2019-NMSC-001, ¶ 19 (internal quotation marks and citation omitted), at that point in its deliberations. The jury continued deliberating for roughly two hours after it sent the "11 [to] 1" note, and none of its subsequent on-record communications with the district court unambiguously indicated that the jury was deadlocked on vehicular homicide. Thus, we

cannot ascertain with the degree of certainty required by *Lewis* whether the jury's posture remained the same at the time of its discharge.

**{13}** The State contends that, even if we conclude that the record is unclear regarding the level of deadlock, we should nonetheless "attribut[e]" "any deficiency in the record . . . to Defendant because Defendant failed to request a jury poll or otherwise seek clarification on the level of deadlock based on his own conceded understanding that the jury deadlocked on homicide by vehicle[.]" In the State's view, because Defendant "has the burden of providing a sufficient record or factual basis for his double jeopardy [challenge,]" Defendant's failure to create a clear record of the level of deadlock requires us to affirm. We disagree. Although we acknowledge that this Court's reasoning in *Lewis* can be read to support the State's position, *see* 2017-NMCA-056, ¶ 13 (citing *State v. Wood*, 1994-NMCA-060, ¶ 19, 117 N.M. 682, 875 P.2d 1113; *State v. Antillon*, 2000-NMSC-014, ¶ 6, 129 N.M. 114, 2 P.3d 315; and *State v. Sanchez*, 1996-NMCA-089, 122 N.M. 280, 923 P.2d 1165), we conclude that this reasoning retains no vitality in light of our Supreme Court's opinion in that case.

**{14}** First, although we faulted the defendant in *Lewis* for failing to "develop any facts at the time the jury returned its verdicts or demonstrate [that] there was any question regarding the level of deadlock[,]" 2017-NMCA- 056, ¶ 13, our Supreme Court did not mention, let alone rely on, that strand of reasoning in affirming our decision. And our Supreme Court's focus on the actions of the district court—its in-court confirmation of the level of deadlock—accords with the Court's recognition that district courts have a "nondiscretionary duty" to protect a defendant's right to an unambiguous jury verdict. *Phillips*, 2017-NMSC-019, ¶ 14. Though perhaps not determinative of the issue, this certainly cuts against the conclusion that a defendant bears the burden of establishing a lack of clarity in the district court.

**{15}** Second, there's a practical problem: *Castrillo* and its progeny require us to determine whether a district court has created a "clear record," *Phillips*, 2017-NMSC-019, ¶ 16, of the level of offense on which the jury has deadlocked, and a district court abuses its discretion in finding a manifest necessity to declare a mistrial on an offense if the record is not "clear" that that offense was the subject of the deadlock. But under the approach taken by our opinion in *Lewis*, retrial would not be barred if a defendant failed to "develop . . . facts . . . demonstrat[ing that] there was [a] question regarding the level of deadlock." 2017-NMCA-056, ¶ 13. So adhering to that reasoning would put us in the difficult position of determining whether the record in a particular case is adequately developed to determine whether the record is unclear.

**{16}** Finally, none of the three cases we relied on in *Lewis—Wood*, *Antillon*, and *Sanchez*—involved a defendant's *Castrillo* challenge to retrial following the declaration of a mistrial due to jury deadlock. In all three cases, our appellate courts rejected the defendants' double jeopardy claims because the record was insufficient *to permit review*—in other words, because they could not tell on the basis of the record below whether the defendants' claims had merit. *See Wood*, 1994-NMCA-060, ¶ 20 (rejecting the defendant's double jeopardy challenge where there was "no factual basis in the

record to support [it]" and concluding that the defendant's two attempts to supplement the record on appeal with a copy of a judgment and sentence from a prior conviction had been improper); *Antillon*, 2000-NMSC-014, ¶¶ 5-7 (rejecting the defendant's contention that a default civil forfeiture judgment entered prior to his conviction precluded his prosecution because the forfeiture complaint and judgment were not part of the record); *Sanchez*, 1996-NMCA-089, ¶¶ 7-10 (holding that the defendant had failed to provide a sufficient record to permit review of his double jeopardy argument that he had been subjected to multiple punishments for unitary conduct defendant where the challenge relied on the "barebone" factual allegations in the indictment). Here, in contrast, the factual basis for Defendant's double jeopardy challenge is apparent.

**{17}** Because the record is ambiguous as to whether the jury was deadlocked on the greater offense of homicide by vehicle or the lesser included offense of DUI, we conclude that the district court failed to create a clear record as to the level of deadlock. We therefore hold that there was no manifest necessity to declare a mistrial on the homicide by vehicle charge under the circumstances of this case.[2]

## II. Defendant Consented to the Declaration of a Mistrial on the Greater Offense of Homicide by Vehicle

**{18}** If we were constrained to review only the district court's reasons for denying Defendant's motion to dismiss, we would be compelled to reverse. However, we may affirm the district court if its ruling was right for any reason. *See generally Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264 ("Under the right for any reason doctrine, an appellate court may affirm a district court ruling on a ground not relied upon by the district court if (1) reliance on the new ground would not be unfair to the appellant, and (2) there is substantial evidence to support the ground on which the appellate court relies." (internal quotation marks and citation omitted, alterations incorporated)). We therefore asked the parties to file supplemental briefs addressing

---

2In *Lewis*, our Supreme Court recommended that the Criminal Uniform Jury Instructions Committee consider adopting partial verdict forms to allow "[a] jury to indicate that it unanimously finds the defendant not guilty on a greater offense even if deadlocked on a lesser offense," an approach the Court indicated would be consistent with the modified-acquit first approach adopted in the same case and "the requirement under *Castrillo* that the district court create a clear record as to which offenses the jury has agreed and which it has deadlocked." *Lewis*, 2019-NMSC-001, ¶ 38; *see also Castrillo,* 1977-NMSC-059, ¶ 5 ("Henceforth, when a jury announces its inability to reach a verdict in cases involving included offenses, *the trial court will be required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses.* The jury may then be polled with regard to any verdict thus returned." (emphasis added)). The Committee is in the process of doing so. *See* Proposed Revisions to the Uniform Jury Instructions – Criminal Proposal 2020-022 (March 3, 2020) (proposing the adoption of UJI 14-6002B NMRA), *available at* https://supremecourt.nmcourts.gov/closed-for-comment.aspx. We believe the manifest necessity issue presented by this case, and others like it, *see, e.g.*, *State v. Fielder*, 2005-NMCA-108, ¶ 15, 138 N.M. 244, 118 P.3d 752, would be unlikely to arise if our Supreme Court adopted such a rule. For a thoughtful law review article advocating for the adoption of a partial-verdict rule, *see* Ben Osborn, Note, *Let's Call the Poll Thing Off: Partial Verdict Forms as a More Reliable Way to Enforce the Double Jeopardy Clause When Juries Deadlock on Counts With Lesser Included Offenses*, 48 N.M. L. Rev. 522 (2018).

whether *Castrillo* and its progeny apply when a defendant has consented to a mistrial and whether Defendant had consented to a mistrial in this case. We conclude that the *Castrillo* rule does not apply in this case and hold that Defendant may be retried for homicide by vehicle because he consented to the district court's discharge of the jury without obtaining a verdict on that offense.

**{19}**   "Long established U.S. Supreme Court precedents hold that a defendant's . . . consent to a mistrial generally forecloses any claim of double jeopardy." *State v. Martinez*, 1995-NMSC-064, ¶ 8, 120 N.M. 677, 905 P.2d 715. The policies underlying this rule fully apply when a defendant consents to a mistrial declared because of a trial court's belief that the jury is unable to reach a unanimous verdict. First, in consenting to a mistrial declared, erroneously or not, on that ground, the defendant avoids the risk that the jury, through further deliberation, will overcome its disagreement—whether through a conscientious change of heart on the part of individual jurors or otherwise—and return a guilty verdict. *See United States v. Beckerman*, 516 F.2d 905, 909 (2d Cir. 1975) ("The report of a jury in deadlock could be welcome news to an accused who is fearful of his fate."); *cf. State v. Romero*, 2013-NMCA-101, ¶ 22, 311 P.3d 1205 ("Shotgun instructions are prohibited by the New Mexico Supreme Court out of concern for the potentially coercive effect [they may have] on holdout jurors to abandon their convictions to arrive at a verdict with the majority." (internal quotation marks and citations omitted)). Permitting retrial where a defendant has consented thus safeguards the defendant's interest in obtaining a verdict reached through the honest convictions of jurors seated to hear the defendant's case without frustrating "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona v. Washington*, 434 U.S. 497, 509 (1978); *cf. Currier v. Virginia*, 138 S. Ct. 2144, 2151 (2018) ("[C]onsenting to two trials when one would have avoided a double jeopardy problem precludes any constitutional violation associated with holding a second trial. In these circumstances . . . the defendant *wins a potential benefit* and experiences none of the prosecutorial 'oppression' the Double Jeopardy Clause exists to prevent." (emphasis added)); *United States v. Dinitz*, 424 U.S. 600, 608 (1976) ("[W]hen judicial or prosecutorial error seriously prejudices a defendant, . . . a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause[:] the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions."). Second, when a defendant consents to the discharge of the jury on deadlock grounds, the rule permitting retrial forecloses the possibility that the defendant will game the system by performing an about-face and asserting that the discharge was improper after the opportunity for further deliberations has gone. *See United States v. Jorn*, 400 U.S. 470, 486 (1971) (plurality opinion) ("[T]he judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions."). Third, applying the rule in the deadlock context safeguards the public's interest in "fair trials designed to end in just judgments," *Wade v. Hunter*, 336 U.S. 684, 689 (1949), by removing the Double Jeopardy Clause's bar on retrial where it is unnecessary: because the Clause "guards against [g]overnment oppression," it follows that it offers criminal defendants no protection when they forfeit, through their own "voluntary choice[,]" their right to a final determination of their guilt by the first jury empaneled to hear their cause. *United States*

*v. Scott*, 437 U.S. 82, 99 (1978)*; see also Dinitz*, 424 U.S. at 609 ("The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [prosecutorial or judicial] error.").

**{20}** Our Supreme Court has long recognized that manifest necessity and consent independently remove the double jeopardy bar to retrial ordinarily applicable when a defendant's trial is prematurely terminated. *See, e.g.*, *O'Kelly v. State*, 1980-NMSC-023, ¶ 10, 94 N.M. 74, 607 P.2d 612. By referencing that rule, *Castrillo* itself implied that a defendant's consent would permit retrial on a greater offense even where the defendant was erroneously deprived of the right, recognized in the same case, to provide the jury with the option of acquitting on the greater offense alone. *See* 1977-NMSC-059, ¶ 13 ("A mistrial *not moved for or consented to by the defendant* must be based upon a manifest necessity or jeopardy attaches preventing retrial." (emphasis added)). We therefore conclude that if Defendant consented to the district court's declaration of a mistrial on the offense of homicide by vehicle, *Castrillo* and its progeny do not bar retrial.

**{21}** It matters little that defense counsel in this case did not expressly state that he consented to the discharge of the jury without obtaining a verdict on the offense of homicide by vehicle. Implicit consent to a mistrial also removes any double jeopardy bar to retrial. *See, e.g.*, *State v. Leon-Simaj*, 913 N.W.2d 722, 730 (Neb. 2018) ("While the U.S. Supreme Court has yet to squarely address the issue, courts generally agree that implied consent, just like express consent, removes any double jeopardy bar to a retrial."). So we must determine whether Defendant implicitly consented to a mistrial on that offense. Courts are divided in how they make that determination. *See, e.g.*, *Love v. Morton*, 112 F.3d 131, 138 (3d Cir. 1997) ("The [federal] courts of appeals have taken different approaches in determining whether defense counsel's failure to object to a mistrial constitutes implied consent. The First, Fourth, Fifth, Seventh and Eleventh Circuits have adopted a rule that defendants give implied consent to a mistrial if they have an opportunity to object but fail to do so. At the other extreme, the Sixth and the Ninth Circuits refuse to infer consent without some positive manifestation of acquiescence by the defense." (citations omitted)); Aaron L. Weisman, Annotation, *What Constitutes Accused's Consent to Court's Discharge of Jury or to Grant of Motion for Mistrial Which Will Constitute Waiver of Former Jeopardy Plea—Silence or Failure to Object or Protest*, 103 A.L.R. 6th 137 § I.2 (2015) ("[T]here exists a split in the law, among various states and federal circuits, as to whether a defendant's silence, or failure to object, may constitute consent to a declaration of a mistrial or jury discharge."); W.R. Habeeb, Annotation, *What Constitutes Accused's Consent to Court's Discharge of Jury or to Grant of State's Motion for Mistrial Which Will Constitute Waiver of Former Jeopardy Plea*, 63 A.L.R.2d 782 (1959).

**{22}** Our own Supreme Court has addressed the standard for determining whether a defendant has implicitly consented to a mistrial based on jury deadlock three times in

the last ninety years.[3] *See O'Kelly*, 1980-NMSC-023; *State v. Brooks*, 1955-NMSC-002, 59 N.M. 130, 279 P.2d 1048, *disapproved of on other grounds by Castrillo*, 1977-NMSC-059, ¶ 5; *State v. Woo Dak San*, 1930-NMSC-019, 35 N.M. 105, 290 P. 322. In *Brooks* and *Woo Dak San*, the Court appears to have set a low but bright-line bar for determining consent: retrial was permitted if the defendant failed to object to the mistrial declaration, regardless of whether the defendant had otherwise indicated that he wanted the empaneled jury to determine his guilt. *See Brooks*, 1955-NMSC-002, ¶¶ 3, 6 (holding in the alternative that the defendant had waived his double jeopardy claim by "fail[ing] to except to the action of the court in discharging the jury[,]"although the defendant had "moved the court to poll the jury to ascertain if the jury had arrived at a verdict of conviction or acquittal either of first degree murder, second degree murder or manslaughter, and if so, to return a verdict accordingly[,]" (citing *Woo Dak San*, 1930-NMSC-019)); *Woo Dak San*, 1930-NMSC-019, ¶ 4 (alternative holding) (" 'The objection not appearing on the record proper nor by bill of exceptions, as far as the record is concerned, it appears that the jury was discharged without objection and with the implied consent and in the presence of the appellant.' " (approvingly quoting *Territory v. Donahue*, 1911-NMSC-004, ¶ 2, 16 N.M. 17, 113 P. 601)).[4] In *O'Kelly*, however, our Supreme Court implied that it will not infer consent where the record indicates that a defendant may have had no opportunity to object. 1980-NMSC-023, ¶ 10 (indicating that the court would give the defendant the "benefit of [his] intendment" to "state that he had no objection to the mistrial *if he was allowed a jury poll*" where the defendant "stated that he had no objections to a mistrial, . . . request[ed] a jury poll[,] and was then interrupted by the [district] court" (emphasis added)). This Court reached a similar holding when we addressed the issue in *State v. Sedillo*, 1975-NMCA-089, ¶ 4, 88 N.M. 240, 539 P.2d 630. *See id.* ("It would offend our sense of justice to construe [the] defendant's silence after [defense counsel was held in contempt] as [consent to a mistrial].").

**{23}**    Although the current standard for determining consent in New Mexico appears to be unclear, Defendant plainly consented to a mistrial on the record before us. It was apparent throughout the district court's discussions with counsel that it intended to discharge the jury if it remained deadlocked, and the court never indicated that it intended to ascertain whether the jury had acquitted Defendant of homicide by vehicle. The court gave defense counsel ample opportunity to object, and it even expressly asked for input after receiving the jury's final note. When given the opportunity, defense

---

3The Court has also addressed the issue of consent in a substantially different context. In *State v. Earnest*, 1985-NMSC-023, ¶ 7, 103 N.M. 95, 703 P.2d 872, *vacated on other grounds*, 477 U.S. 648 (1986) (per curiam), the Court held that the defendant had consented to the district court's declaration of a mistrial where he had sought to withdraw his own two motions for a mistrial after they had been granted. The issue before our Supreme Court in *Earnest*—whether a defendant's attempt to withdraw a *motion* for a mistrial after it has been granted precludes a finding of consent—does not bear on the present case. Although defense counsel here asked the district court whether he needed to move for a mistrial "for the record," that request came only after the jury was discharged, and, unlike the motions in *Earnest*, was therefore not the impetus for the court's mistrial declaration.

4The Court in *Woo Dak San* did state on rehearing, however, that "it would be well for district judges, before discharging a jury for failure to agree upon a verdict, to call upon the defendant for his consent or objections to the proposed action[.]" 1930-NMSC-019, ¶ 19.

counsel chose not to object, instead affirmatively indicating to the district court that its proposed course of action was appropriate by stating that he thought the proceedings were "at a hung jury state" and "at a mistrial." Counsel then made clear that he agreed with the jury's discharge after it occurred by asking whether he needed to move for a mistrial. Thus, regardless of the standard applied, Defendant consented to the termination of proceedings without being given any opportunity for an acquittal on the charge of homicide by vehicle.

**{24}** Recognizing consent under the circumstances of this case comports with the policies permitting retrial where a defendant has consented. We acknowledge that Defendant obtained no benefit from the district court's failure to ascertain whether the jury had acquitted him of homicide by vehicle. Defendant likely stood only to gain from a poll in compliance with the requirements of Rule 5-611(D): because the jury had been presented with the option of entering a guilty verdict on homicide by vehicle in the provided verdict forms, the only outstanding question at the time of its discharge was whether it had voted to acquit or deadlocked. Thus, had the poll been conducted, the jury would probably have announced either that it had acquitted Defendant on that charge, in which case retrial would have been barred, or announced that it was deadlocked on that offense, in which case the jury would have been discharged on grounds of manifest necessity—precisely the result that obtained below. Nevertheless, the other primary rationales for the rule permitting retrial apply with full force. Failing to recognize consent under the circumstances of this case would create an unacceptable risk of gamesmanship. We find it difficult to believe that defense counsel would have agreed that the proceedings were "at a hung jury state" and "at a mistrial" if he earnestly believed that the jury had acquitted Defendant on the homicide by vehicle charge. Moreover, Defendant suffered no semblance of "[g]overnment oppression," *Scott*, 437 U.S. at 99, from the termination of his trial. Here, Defendant was not "*deprived* of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal." *Jorn*, 400 U.S. at 484 (emphasis added). Instead, he implicitly agreed that no acquittal on homicide by vehicle would be forthcoming. We hold that he may be retried for that offense.

**CONCLUSION**

**{25}** We affirm and remand for further proceedings consistent with this opinion.

**{26} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**